UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RICHARD GANNON, On His Own Behalf And    :
On Behalf Of All Others Similarly Situated    :
                                                                           :
                                   Plaintiff,    :
                                                                           :         **MEMORANDUM**
                  -against-                          :         **OPINION & ORDER**
                                                                           :
NYSA-ILA PENSION TRUST FUND AND    :         09-cv-10368 (PGG)
PLAN, FRANK M. McDONOUGH, ANTHONY    :
PETRIZZO, MAURICE C. BYAN, JOSEPH    :
CURTO, JOHN BOWERS, ALBERT    :
CERNADAS, and STEPHEN KNOTT,    :
Personally and In Their Capacity As Members Of    :
The Board of Trustees Of The NYSA-ILA    :
Pension Trust Fund And Plan    :
                                                                           :
                                                                           :
                                   Defendants.    :
------------------------------------------------------------x

PAUL G. GARDEPHE, U.S.D.J.:

            In this putative class action brought under the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., Plaintiff Richard Gannon alleges that

Defendants NYSA-ILA Pension Trust Fund and Plan ("Plan") and its Board of Trustees

wrongfully denied pension benefits to Plaintiff and other similarly situated Plan participants.

The Complaint pleads four claims for relief:

> 1.  that in failing to credit Plaintiff for five years of service, Defendants failed to
>     properly apply the terms of the Plan, in violation of Section 502(a)(1)(B) of
>     ERISA;
>
> 2.  that in failing to provide an updated summary plan description to Plan
>     participants, Defendants violated Sections 502(a)(1)(A) and 502(c)(1)(B) of
>     ERISA;
>
> 3.  that Plaintiff is entitled to injunctive relief as against the individual
>     defendants, pursuant to Section 502(a)(3) of ERISA, because they breached
>     their fiduciary duties in allegedly failing to amend the Plan to bring it into

compliance with <u>McDonald v. NYSA-ILA Pension Plan</u>, No. 99-cv-9054 (PKC), 2004 WL 2050166, at *6 (S.D.N.Y. Aug. 4, 2004), <u>aff'd</u>, 450 F.3d 91, 95 (2d Cir. 2006) ("<u>McDonald II</u>"); and

4. that because the individual defendants breached their fiduciary duty to ensure that the Plan was amended to comply with <u>McDonald II</u>, they are liable – under Section 409(a) of ERISA – "to make good to such plan any losses to the plan resulting for each such breach."

(Cmplt. ¶¶ 27-51)

Pending before the Court are Defendants' motion to dismiss the third and fourth claims for relief, and motion to stay this action and remand the matter to the Board of Trustees. For the reasons stated below, Defendants' motion to dismiss the Complaint's third and fourth claims will be GRANTED, and the motion to stay the action and remand the matter to the Board of Trustees will be DENIED.

## **<u>BACKGROUND</u>**

## I.   **<u>PLAINTIFF'S INITIAL CLAIM FOR PENSION BENEFITS</u>**

Plaintiff is a participant in the NYSA-ILA Pension Trust Fund and Plan, an ERISA-governed employee welfare benefit plan administered by Defendants.  (Cmplt. ¶ 1)  The Plan is a multi-employer joint labor-management trust fund organized and existing under § 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5).  (Affidavit of Charles Ward in Support of Defendants' Motion to Dismiss ("Ward Aff.") ¶ 2)  Plaintiff worked continuously for the New York Shipping Association ("NYSA") between 1969 and 2009, except for a five-year period between 1974 and 1978.  (Affirmation of Edward Pauk on Behalf of Plaintiff's Opposition to Defendants' Motion to Stay/Dismiss ("Pauk Aff."), Ex. 1; Cmplt. ¶ 10)

In May 2009, Plaintiff sent a letter to the Plan requesting his "non-forfeitable accrued benefit statement."  (Supplemental Affidavit of Charles Ward ("Ward Supp. Aff."), Ex. F)  On June 9, 2009, the Plan's Executive Director sent a letter to Plaintiff informing him that he

had "a total of 31 years of accrued, credited service" and "a vested right to receive this pension."
(Ward Supp. Aff., Ex. G)  On June 30, 2009, Plaintiff submitted an application for pension
benefits to the Plan.  (Pauk Aff., Ex. 2)  As part of his application, Plaintiff acknowledged that he
was entitled to a gross monthly benefit of $3,720, correlating with 31 years of service.  (Id. at 10)
After a reduction for a survivor annuity benefit, Plaintiff further acknowledged that he was
entitled to net monthly compensation of $2,957.40.  (Id.)

On July 13, 2009, the Plan's Executive Director sent a letter to Plaintiff informing
him that his pension was approved "at the rate gross of $3,720.00 per month and a net of
$2,957.40 per month."  (Pauk Aff., Ex. 3 (emphasis in original))  Defendants did not credit
Plaintiff for the five years of service he accrued before his break in service in 1974.  (Cmplt.
¶ 11)

## II.   PLAINTIFF'S APPEAL AND THE PLAN'S DETERMINATION

On August 18, 2009, Plaintiff's counsel sent a letter to the Plan challenging the
benefit determination.[1]  The letter, in its entirety, reads as follows:

> I represent Mr. Richard Gannon, whose Authorization is enclosed.
>
> On July 13, 2009, Mr. Gannon's Service Pension was approved retroactive to July
> 1, 2009.  Although Mr. Gannon accrued 36 years of service, his pension was
> calculated on the basis of only 31 years, and he was awarded a pension of only
> $3,720 (31 x $120).  Apparently, the Board decided not to credit the five years of
> service he accrued between 1969 and 1973 due to an interruption of his service
> between 1974 and 1978.
>
> This letter constitutes Mr. Gannon's claim to the five uncredited years, which will
> increase his pension to $4,320 ($120 x 36).  In deciding his Claim, please specify
> which version of the Pension Plan you relied upon, with specific reference to the
> applicable Plan provisions.  This letter is [sic] also requests that you provide me

---

[1]  Defendants concede that Plaintiff's initial application for a pension constitutes a claim for
benefits under the Plan, and that Plaintiff's counsel's August 18, 2009 letter constitutes an appeal
under the Plan.  (Transcript of March 2, 2010 pre-motion conference ("Tr.") at 12-13); see also
Ward Aff., Ex. D)

with copies of all Plans and Summary Plan Descriptions applicable to Mr.
Gannon's Claim.

I thank you in advance for a prompt decision on Mr. Gannon's Claim and a timely
production of the requested documents.

(Ward Aff., Ex. B; Cmplt. ¶ 12)

On September 1, 2009, Plan counsel responded to Plaintiff's counsel's letter as

follows:

Your letter to the Board of Trustees of the NYSA-ILA Pension Trust Fund has
been forwarded to cocounsel for reply.  Your letter requests copies of the Fund's
plan documents applicable to Richard Gannon's claim and the identification of
the provision upon which the Fund relied in making its determination concerning
Mr. Gannon's pension application.

Since Mr. Gannon's final year of employment was in Contract Year 2009, the
Fund's current Agreement and Declaration of Trust and Plan (ADT&P) governs
his application for benefits.  Accordingly, we enclose a copy of the Fund's
January 29, 2009 ADT&P, including amendments.  The provision upon which the
Fund relied in not crediting Mr. Gannon for his period of employment from 1969
through 1973 is article III, section 4(c)(i) of the ADT&P.  We also enclose a copy
of the July 2003 Summary Plan Description (SPD) and an August 2006
memorandum setting forth the procedures for calculating a participant's years of
credited service for vesting and accrual purposes.  The SPD and memorandum
provide guidance in applying the terms of the ADT&P to Mr. Gannon's
application for benefits.

After you have had an opportunity to review the enclosed documents, cocounsel
would like to meet to discuss Mr. Gannon's claim.  Please contact either of the
undersigned to arrange a meeting.

(Ward Aff., Ex. C; Cmplt. ¶ 13)  No meeting between counsel ever took place, and Plaintiff's

counsel subsequently requested that his August 18, 2009 letter be "treated as Mr. Gannon's

appeal of the Fund's determination."  (Ward Aff., Ex. D.)

On December 18, 2009, 123 days after Plaintiff challenged Defendants' initial

benefit determination, the Plan's Trustees issued a decision denying Plaintiff's appeal.  (Ward

Aff., Ex. D; Cmplt. ¶ 17)  In rejecting Plaintiff's claim that he should receive credit for the five

years of service before his break in service, the Trustees relied on Article III, § 4(c)(i) of the

Plan, commonly known as the "rule of parity":

> . . . .The Fund's Executive Director determined that Mr. Gannon had accrued 31
> years of credited service for his work years from 1979 through 2009 but was not
> entitled to accrue any years of credited service for work years from 1969 through
> 1973 because of his five-year break in service.  That determination was based on
> article III, section 4(c)(i) of the Fund's Agreement and Declaration of Trust and
> Plan (ADT&P), which provides as follows:
>
>> [E]ffective January 1, 1976, a Participant who is not vested in his
>> or her accrued benefit shall lose all prior years of credit service for
>> purposes of vesting and accrual of benefits at such time as the
>> Participant's consecutive Break-in-Service Years equal the
>> Participant's total years of credited service prior to such Break-in-
>> Service Years.  Upon return to the industry the Participant shall be
>> considered a new employee.
>
> The Executive Director's determination was correct.  When Mr. Gannon
> suffered his break in service, the Employee Retirement Income Security
> Act provided that a participant became vested upon earning at least ten
> years of credited service.  Since Mr. Gannon had worked only five years,
> he had not yet become vested.  In accordance with article III, section
> 4(c)(i) of the Fund's ADT&P he lost those years of service for accrual
> purposes because the number of his consecutive break-in-service years
> (five) equaled the number of his years of service before the break-in-
> service years (five).  Upon returning to the industry in 1979[,] Mr. Gannon
> earned 31 years of credited service without incurring a break in service.
> Accordingly, Mr. Gannon is entitled to receive monthly pension benefits
> based on those 31 years of service.  Mr. Gannon's appeal is denied.

(Ward Aff., Ex. D.)

The cover letter accompanying the Board of Trustees' decision informs Plaintiff

that he has exhausted his administrative remedies and may seek judicial review:

> Richard Gannon's request for additional benefits was considered by the Fund's
> Board of Trustees.  A copy of the Board's determination is enclosed.  The Board's
> decision is conclusive, final and binding.  In accordance with 29 C.F.R.
> § 2560.503-1(j)(4), Mr. Gannon has the right to commence an action in
> accordance with section 502(a) of the Employee Retirement Income Security Act
> of 1974, 29 U.S.C. 1132(a).

(Id.)

III.   **PLAINTIFF'S COMPLAINT**

Plaintiff filed this action on December 21, 2009.  Plaintiff contends that

Defendants erred in determining that Article III, § 4(c)(i) governs his claim for pension benefits,

and argues that Article III, § 1(b)(ii) trumps the "rule of parity" set forth in §4(c)(i).[2]  (Cmplt. ¶

23.)  Article III, § 1(b)(ii) provides:

> To be eligible for a Service Retirement Pension, a Participant must
> fulfill the following conditions: . . .
>
> (b)(ii) Effective January 1, 1972, the Participant has been employed in
> the industry for a total period of twenty-five (25) out of thirty-five (35)
> years as follows:
>
>> (1) twenty (20) years of credited service of not less than 400 hours
>> in each of those twenty (20) years, during which period he shall
>> have worked an aggregate total of not less than 14,000 hours,
>> provided, however, effective October 1, 1978, a year of credited
>> service, on or after October 1, 1978, for purposes of meeting the
>> twenty (20) year requirement of this subparagraph, shall mean a
>> year of not less than 700 hours of credited service; and
>>
>> (2) immediately preceding the date of application, five (5)
>> consecutive years of credited service with not less than 700 hours
>> in each of those five (5) years.

(Ward Aff., Ex. A at 12; Cmplt. ¶ 23.)

The Complaint asserts that in McDonald II the Second Circuit held that "all of a

participant's years of credited service, regardless of any break in service, must be counted toward

the 25 years required to qualify for a Service Retirement Pension."  (Cmplt. ¶ 24) (citing

McDonald v. NYSA-ILA Pension Plan, 2004 WL 2050166, at *6 (S.D.N.Y. Aug. 4, 2004),

---

[2] The standard set forth in § §4(c)(i) is referred to as the "rule of parity," because it provides that
a non-vested employee will forfeit credit for years of service preceding a break in service where
the number of his break years equals the number of years of credited service accrued before the
break in service.

6

aff'd, 450 F.3d 91, 95 (2d Cir. 2006)).  In reaching this conclusion – the Complaint notes – the

Court found that

> "the 1972 Plan added an alternate method of eligibility that did <u>not</u> require
> 'continuous' service, but rather allowed a longshoreman to be eligible when his
> employment in the industry reached 'a <u>total</u> period of twenty-five (25) years' as
> defined by the Plan, Art. III, § 1(c)(ii) of the 1972 Plan (emphasis added), no
> matter how long it took to accumulate the twenty-five years."

(Cmplt. ¶ 25) (quoting <u>McDonald II</u>, 450 F.3d 91, 95 (2d Cir. 2006) (emphasis in original).[3]

The Complaint thus posits a clear question of law:  does <u>McDonald II</u>'s determination – with

respect to eligibility for a pension under the Plan – that an employee must be given credit for pre-

break years of service, require that employees likewise be given credit for pre-break years of

service for purposes of calculating their monthly pension benefit?  Because Plaintiff meets all the

requirements for a pension under Article III, § 1(b)(ii), he contends that his pension must be

calculated "based on all his 36 years of credited service."  (Cmplt. ¶ 26)

## <u>DISCUSSION</u>

**I.     PLAINTIFF MAY SEEK JUDICIAL REVIEW OF THE PLAN'S
        DETERMINATION CONCERNING HIS MONTHLY PENSION BENEFIT**

Defendants do not contend that Plaintiff's action should be dismissed for failure

to exhaust administrative remedies.  Given the Trustees' letter to Plaintiff informing him of his

right to seek judicial review (Ward Aff., Ex. D), such an argument would not be tenable.

Instead, Defendants assert that this action should be stayed and the matter remanded to the Board

so that it may consider Plaintiff's argument that <u>McDonald II</u> requires that he receive credit for

all his years of service, whether pre- or post-break, for purposes of calculating his monthly

pension benefit.  (Def. Reply Br. 2-3)  Defendants contend that Plaintiff deliberately chose not to

present his <u>McDonald II</u> argument during the administrative process – in order to evade the

---

[3] Article III, Section 1(c)(ii) has since been renumbered as Article III, Section 1(b)(ii).

deferential standard of review generally applicable to a Plan administrators' determinations where the plan gives its administrator discretionary authority to determine eligibility for benefits – and that the Trustees are entitled to consider Plaintiff's present legal theory of recovery in the first instance.  (Def. Br. 6, 11, 17; Def. Reply Br. 5-6)

As discussed below, this Court concludes that Plaintiff's submission to the Board of Trustees contained the evidence and information necessary for the Board to render a decision on his claim.  The Court further concludes that the case law does not require an ERISA plaintiff to detail all of his or her legal theories during the administrative process in order to present these issues on judicial review.  Finally, the issue posed by the Complaint requires interpretation and application of McDonald II.  Any Board determination concerning the applicability of McDonald II would be entitled to no deference from this Court, because it would raise a legal question subject to de novo review.  See, e.g., Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 581 (2d Cir. 2006) (questions of law are subject to de novo review; noting that plan administrator is owed "no deference" when court is called upon to address an issue of statutory interpretation).

*     *     *     *

Under ERISA, "an issue or theory that is raised in court proceedings must be based on information or evidence that was actually before the plan administrators."  Novella v. Westchester Cnty., No. 02-cv-2192 (MBM), 2004 WL 1752820, at *6 (S.D.N.Y. Aug. 4, 2004) (citing Bahnaman v. Lucent Techs., Inc., 219 F. Supp. 2d 921, 925 (N.D. Ill. 2002)).  Here, Plaintiff's counsel's August 18, 2009 letter challenging Defendants' calculation of Plaintiff's monthly pension benefit clearly set forth the basis for Plaintiff's claim.  Counsel asserted that Plaintiff should receive a pension based on 36 rather than 31 years of service, and argued that the

Board erred in "decid[ing] not to credit the five years of service [Plaintiff] accrued between 1969

and 1973 due to an interruption of his service between 1974 and 1978."  (Ward Aff., Ex. B)

There is thus no question that Plaintiff put Defendants on notice of their alleged error.

   Defendants complain, however, that Plaintiff's counsel did not reference

McDonald II in his letter.  Given that, in McDonald, this Board spent more than five years

litigating issues stemming from the Plan's break-in-service provisions – a process that continued

from at least 2001 to 2006 and that spawned at least seven district and circuit court opinions (see

McDonald, 2002 WL 1974054 (S.D.N.Y. Aug. 27, 2002), aff'd, 450 F.3d 91; McDonald, 153 F.

Supp. 2d 268 (S.D.N.Y. 2001) and 2001 WL 1154630 (S.D.N.Y. Oct. 1, 2001), aff'd in part,

rev'd in part, 320 F.3d 151, remanded to 2004 WL 2050166 (S.D.N.Y. Aug. 6, 2004),

reconsideration denied 2004 WL 2429809 (S.D.N.Y. Oct. 20, 2004)), and given that the Board

was amended the Plan in August 2006 to comply with McDonald II (Def. Br. 7), it strains belief

that the Board did not consider McDonald II when Plaintiff's counsel raised his break in service

claim.

   Assuming arguendo that the Board did not consider the implications of McDonald

II in resolving Plaintiff's claim, it is clear that the case law does not require an ERISA plaintiff to

articulate all of his or her legal theories during the administrative process as a prerequisite for

using these arguments in district court.  Courts throughout the nation have uniformly adopted the

rule that ERISA requires only claim/remedy exhaustion, not issue exhaustion.  See, e.g., Vaught

v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 631-33 (9th Cir. 2008) ("issue

exhaustion is not applicable in the ERISA context"; plaintiff "exhausted his administrative

remedies by requesting review of his claim denial and obtaining the Plan's final decision on his

claim.  His subsequent decision to raise a new issue before the district court did not retroactively

erase his prior effective exhaustion of administrative remedies."); Farr v. Hartford Life and Accident Ins. Co., 322 F. App'x 622, 628, 2009 WL 1069181, at **5 (10th Cir. 2009) (dicta) ("We have . . . applied a rule barring ERISA claims that were not previously pursued administratively (i.e., claim exhaustion).  But we have not extended this rule to bar subsidiary arguments urged on judicial review in support of a claim itself fully exhausted in the administrative process (i.e., issue exhaustion)."); Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 186 (3d Cir. 1984) ("Section 502(a) of ERISA does not require either issue or theory exhaustion; it requires only claim exhaustion") (emphasis in original); Vincent v. Lucent Techs., Inc., 733 F. Supp. 2d 729, 737 (W.D.N.C. 2010) (refusing to apply issue exhaustion requirement in ERISA action); Lieberman v. United Healthcare Ins. Co., No. 09-cv-81050, 2010 WL 903260, at *3 (S.D. Fla. Mar. 10, 2010) (same); Pearson v. Group Long Term Disability Plan for Emps. of Tyco Intern. (US), Inc., 538 F. Supp. 2d 1073, 1085-86 (E.D. Ark. 2008) ("While it would defeat the purpose of this non-adversarial [administrative] proceeding not to require claim exhaustion, it also would be inconsistent with the nature of the proceeding to require issue exhaustion as though the proceeding were adversarial."); Bahnaman v. Lucent Techs., Inc., 219 F. Supp. 2d 921 (N.D. Ill. 2002) ("a plan participant need only exhaust claims, not theories or issues.  As long as he or she has presented the claim to the administrative reviewing body, the participant may raise any theory or issue as to the reviewing body's decision. . . .")[4]  In sum,

---

[4]  The cases cited by Defendants (Def. Reply Br. 5-6) are not to the contrary.  Novella, 2004 WL 1752820, at *6 (S.D.N.Y. Aug 4, 2004), turned on plaintiff's failure to provide information or evidence during the administrative proceedings that the plaintiff then sought to utilize before the district court.  In that case, plaintiff sought pension credit for the time period during which he collected workers' compensation benefits.  While acknowledging that ERISA may "require[] only claim exhaustion, rather than issue or theory exhaustion," the court found that "Novella's failure to inform the Trustees that he was receiving workers' compensation benefits means that that fact was not before them, and precludes him from now bringing a claim for pension credits on the basis of that fact."  Here, all the relevant facts were before the Trustees.

Plaintiff presented the information and evidence necessary to his claim during the administrative proceedings; his failure to cite to McDonald II presents no obstacle to judicial review. Defendants' motion for a stay and remand will be denied.

## II.   THE TRUSTEES DID NOT ACT AS FIDUCIARIES WHEN THEY AMENDED THE PLAN

In the Complaint's third and fourth claims for relief, Plaintiff alleges that the individual defendants breached their fiduciary duties to him and other Plan participants by failing to amend the Plan to bring it into compliance with McDonald II. (Cmplt. ¶¶ 45-51) Defendants have moved to dismiss these claims, arguing that amending an ERISA plan does not constitute the exercise of fiduciary duties. For the reasons stated below, Defendants' motion to dismiss will be granted.

### A.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)),

---

Similarly, in Jacobs v. Xerox Corp. Long Term Disability Income Plan, 356 F. Supp. 2d 877, 892 (N.D. Ill. 2005), the court ruled that plaintiff could not proceed with an estoppel argument not presented below where the claim "depend[ed] on factual and interpretive issues that are intertwined with the plan administrator's assessment of the plan documents. . . ." Here, there is no dispute as to the facts, which were all squarely before the Trustees.

Finally, Peterson v. Cont'l Cas. Co., 282 F.3d 112, 118 (2d Cir. 2002) addresses Article III standing, and sheds no light on whether ERISA requires issue exhaustion.

and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. 544).  Moreover, the court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit."  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

### B.   Analysis

ERISA defines a fiduciary as any person who "exercises any discretionary authority or discretionary control respecting management" or "has any discretionary authority or discretionary responsibility in the administration" of a plan.  29 U.S.C. § 1002(21)(A).  For "purpose[s] of determining the applicability of fiduciary obligations," however, "'discretion' . . . means solely that the plan administrator is making a choice reserved to it by the plan document in administering the plan, not tinkering with the plan document itself."  Walling v. Brady, 125

F.3d 114, 119-120 (3d Cir. 1997)  Accordingly, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."  Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995) (citing Adams v. Avondale Industries, Inc., 905 F.2d 943, 947 (6th Cir. 1990) ("a company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan").  "Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries."  Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996); see also In re Citigroup ERISA Litig., No. 07-cv-9790, 2009 WL 2762708, at *11 (S.D.N.Y. Aug. 31, 2009) ("[A]mending an ERISA plan is a settlor function, and ERISA assigns no fiduciary duties to sponsors when they 'adopt, modify, or terminate' ERISA plans.") (quoting Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443 (1999)).  ERISA's definition of "plan sponsor" includes, in the case of a multi-employer plan such as the Plan here, "the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan."  29 U.S.C. § 1002(16)(B)

Plaintiff argues, however, that the Plan is a multi-employer pension plan enacted under the Taft-Hartley Act, and is therefore distinguishable from the single-employer plans at issue in Curtis-Wright, Lockheed, and Hughes.  (Pltf. Opp. 20-23).  In support of this argument, Plaintiff cites Chambless v. Masters, Mates & Pilots Pension Plan, 772 F.2d 1032 (2d Cir. 1985).  Chambless involved an alleged breach of fiduciary duty by the plan administrator of a multi-employer plan.  Id. at 1035, 1038-39.  Chambless alleged that a plan amendment concerning eligibility for pension benefits had improperly discriminated against him and was arbitrary and capricious.  Id. at 1037.  The Second Circuit reached the merits of Chambless's breach of fiduciary claim under ERISA without discussing whether amendment of a multi-employer plan could implicate the plan administrator's fiduciary duties.  Id. at 1038-39.  Since Chambless, the

Second Circuit has cited the case for the proposition that "amending a multi-employer plan can be a fiduciary act for ERISA purposes."  See, e.g., Cement and Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co., 199 F. App'x 29, 32 (2d Cir. 2006).  The Second Circuit has likewise acknowledged, however, that the continued viability of Chambless is in question in light of Curtis-Wright, Lockheed, and Hughes.  (Id.) (declining to reach issue of whether amending plan could constitute a breach of fiduciary duty and stating that "we do not decide now whether our precedent remains valid").[5]

   The majority of courts to confront the issue have held that a plan administrator's amendment of a multi-employer pension plan is not a fiduciary act.  See, e.g., Hartline v. Sheet Metal Workers' Nat'l Pension Fund, 286 F.3d 598, 599 (D.C. Cir. 2002) (per curiam) ("The Supreme Court made it clear in [Curtiss-Wright, Lockheed, and Hughes] that employers and plan sponsors do not act in a fiduciary capacity when they modify, adopt or amend plans.  Nothing in the Supreme Court's decisions or ERISA itself creates an exemption for multiemployer pension plans.  Therefore, the district court correctly concluded that the multiemployer pension fund trustees involved in this case did not act in a fiduciary capacity when they made changes affecting the determination of appellants' benefits."); Walling v. Brady, 125 F.3d 114, 118-20 (3d Cir. 1997) ("we hold that the simple fact that the plan at issue is a multiemployer plan is insufficient to cause the fiduciary duty to attach to the Trustees' actions"; "the ERISA fiduciary obligations simply do not apply to a plan amendment"); Pope v. Central States Southeast and Southwest Areas Health and Welfare Fund, 27 F.3d 211, 213 (6th Cir. 1994) ("We decline to

---

[5]  Given the Supreme Court's reasoning that because (1) the statutory definition of fiduciary functions does not include plan design; and (2) it thus follows that "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries"; and (3) "the act of amending a pension plan [therefore] does not trigger ERISA's fiduciary provisions," Lockheed, 517 U.S. at 890-91, there is reason to question the continued viability of Chambless.

follow the dictum in Musto stating that trustees who 'amend[] a multi-employer plan, . . . 'affect

the allocation of a finite asset pool between participants,' . . . and hence act as plan

administrators subject to a fiduciary duty.") (alteration, emphasis, and omissions in original)

(quoting Musto v. Am. Gen'l Corp., 861 F.2d 897, 912 (6th Cir. 1988)); Cement and Concrete

Workers Dist. Council Pension Fund v. Ulico Cas. Co., 387 F. Supp. 2d 175, 187 (E.D.N.Y.

2005); aff'd on other grounds, 199 F. App'x 29 (2d Cir. 2006) ("nothing about the fact that the

trustee of a multiemployer plan presides over a limited asset pool to which multiple employers

have contributed distinguishes him from a trustee of a single employer plan for the purposes of

ERISA's definition of fiduciary function.  The Second Circuit's prior holdings that the plan

sponsors of multiemployer pension plans act as fiduciaries when they amend the plans they

oversee therefore have been overruled, and the Trustees of the Plan did not act as fiduciaries

when they amended the Plan documents in 1999.")  But see Burke v. Bodewes, 250 F. Supp. 2d

262, 270 (W.D.N.Y. 2003) (finding that "there is nothing in the express holdings of [Curtiss-

Wright, Lockheed, and Hughes] which directly refutes the Second Circuit's rationale with respect

to the nature of trustees' duties in administering a collectively bargained multi-employer plan.

In the absence of any controlling authority to the contrary, the rule of Chambless and Siskind

remains the law of the Circuit.").  This Court will follow the majority rule.

       In the alternative, Plaintiff argues that the Trustees' alleged failure to bring the

Plan into compliance with McDonald II constitutes a breach of fiduciary duty.[6]  (Pltf. Opp. 23-

24)  Plaintiff cites no law for this proposition.  As discussed above, under ERISA, a fiduciary is a

person who exercises discretionary authority or control over the management or administration

---

[6]  There is no dispute here that the Trustees amended the Plan in 2006 in response to McDonald
II.  (Def. Br. 7; Pltf. Opp. 18 n. 11)  Plaintiff contends, however, that the 2006 amendments do
not comply with McDonald II.

of a plan. 29 U.S.C. § 1002(21)(A). A trustee taking action in response to a Court order is not exercising discretionary authority. "It has long been the rule that fiduciary conduct is subject to judicial guidance and that a fiduciary acting pursuant to a court's instructions is protected from assertions of breach of duty." Am. Tel. & Tel. Co. v. Merry, 592 F.2d 118, 125 (2d Cir. 1979) (citing III Scott on Trusts § 259 at 2217 (3d ed. 1967)); see also Swede v. Rochester Carpenters Pension Fund, 467 F.3d 216, 222 (2d Cir. 2006) ("[W]e have previously rejected ERISA plans' arguments that compliance with judicial rulings could give rise to breach of fiduciary claims.") (citing Merry, 592 F.2d at 125). Accordingly, Plaintiff's breach of fiduciary duty claim cannot be premised on action taken by the Trustees in response to McDonald II.

### CONCLUSION

For the reasons stated above, Defendants' motion to stay this action and remand the matter to the Board of Trustees is DENIED, and Defendants' motion to dismiss the third and fourth claims for relief is GRANTED. The Clerk of the Court is directed to terminate the motions (Dkt. No. 18).

Dated:      New York, New York          SO ORDERED:
            March 11, 2011

_Paul G. Randph_
Paul G. Gardephe, U.S.D.J.